**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HIGH SIERRA HIKERS ASSN. et al., ) | CV F 05-0496 AWI DLB |
|  ) | |
| Plaintiffs, ) | MEMORANDUM OPINION |
|  ) | AND ORDER DENYING |
| v. ) | MOTION FOR |
|  ) | RECONSIDERATION |
| UNITED STATES FOREST SERVICE, ) | |
| et al., ) | |
|  ) | |
| Defendants. ) | |
| _____ ) | |
|  ) | Document # 124 |
| CALIFORNIA DEPARTMENT OF FISH ) | |
| AND CAME, CALIFORNIA TROUT, ) | |
| INC., BACK COUNTRY HORSEMEN ) | |
| OF CALIFORNIA, INC., MID VALLEY ) | |
| UNIT, KENNEDY MEADOWS ) | |
| RESORT AND PACK STATION, INC., ) | |
| JAMES L. PHELAN, ) | |
|  ) | |
| Intervenors, ) | |
|  ) | |
| HIGH SIERRA HIKERS ASSN. et al., ) | |
|  ) | |
| Plaintiffs. ) | |
| _____ ) | |

In this action for declaratory and injunctive relief by plaintiffs High Sierra Hikers Association and Wilderness Watch (collectively "Plaintiffs") against defendant United States Forest Service, and two individual Forest Service officials ("Defendants") and intervenor-defendants, California Trout, Inc., Tuolumne County Sportsmen, Kennedy Meadows Resort, James Phelan, and the California Department of Fish and Game (collectively, "Intervenors"),

defendant intervener California Trout has requested reconsideration of this court's order of June 8, 2006, granting in part Plaintiffs' motion for summary judgment (the "June 8 Order"). The motion for reconsideration is pursuant to Rule 60(b)(1)(6) of the Federal Rules of Civil Procedure. Defendants United States Forest Service and State of California Department of Fish and Game have filed notices of non-opposition to California Trout's Motion. Plaintiff High Sierra Hikers' Association timely filed opposition. For the reasons that follow, the motion for reconsideration will be denied.

## LEGAL STANDARD

Rule 60(b) permits a district court to relieve a party from a final order or judgment on grounds of: "(1) mistake, inadvertence, surprise, or excusable neglect; (3) fraud . . . of an adverse party, . . . or (6) any other reason justifying relief from the operation of the judgment." The motion for reconsideration must be made within a reasonable time, in any event "not more than one year after the judgment, order, or proceeding was entered or taken." Id.

Motions to reconsider are committed to the discretion of the trial court. Combs v. Nick Garin Trucking, 825 F.2d 437, 441 (D.C.Cir. 1987); Rodgers v. Watt, 722 F.2d 456, 460 (9th Cir. 1983) (*en banc*). To succeed, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. See, e.g., Kern-Tulare Water Dist. v. City of Bakersfield, 634 F.Supp. 656, 665 (E.D.Cal. 1986), aff'd in part and rev'd in part on other grounds, 828 F.2d 514 (9th Cir. 1987), *cert. denied*, 486 U.S. 1015, 108 S.Ct. 1752, 100 L.Ed.2d 214 (1988).

## DISCUSSION

California Trout's main contention is that the court's June 8 Order was contrary to law in several respects. Although each of the contentions will be discussed in order, California Trout's arguments break down into two basic arguments. First, California Trout contends the court engaged in impermissible fact finding that was contrary to the Forest Services Report of Decision ("ROD") and in violation of the Administrative Procedures Act ("APA"). Second, Defendant contends the court wrongfully dismissed Defendant's argument that provisions of California law

pertaining to navigable waterways compels a decision contrary to the court's decision. California Trout also requests the court rule on a motion to strike certain evidence. The court will address each of California Trout's contentions in order.

**I. Fact Finding and Deference Due Forest Service Determinations**

Although California Trout's argument is somewhat confusing on this point, the main contention appears to be that Forest Service's determination that maintenance of the dams is necessary for the administration of the Emigrant Wilderness is a *factual* determination that is due deference under Chevron U.S.A., Inc. v. Natural Res. Def. Council, 467 U.S. 837, (1984). California Trout contends this court's determination that Forest Service's "decision to repair, maintain and operate the dams is not entitled to deference under Chevron," is contrary to law. California Trout also contends the court is without authority under the APA to "review[ ] de novo whether the actions authorized by the ROD are, in fact, 'necessary to meet the minimum requirements'" June 8 Order at 8:13-16.

The heart of the disagreement between this court's opinion and what California Trout contends is the state of the law is easily stated: California Trout conceives Forest Service's determination that the maintenance of the dams is necessary for the administration of the area as a *factual* determination entitled to Chevron deference while this court conceives Forest Service's determination as a *legal* conclusion due no deference. The June 8 Order discusses the deference due Forest Service's determination at pages 14 through 17. The conceptual model derived through that discussion compels the court to regard the facts established by Forest Service and reflected in the Administrative Record and in the ROD with great deference but subjects Forest Service's conclusions that are derived from those facts to *de novo* review. Thus, it was and remains the court's opinion that, while it must accept facts as they are presented in the ROD and the Administrative Record as true, the court is within its authority when it applies those facts to reach a conclusion that is contrary to the conclusion reached by Forest Service.

In the June 8 Order, the court stated:

What the planned action seeks to accomplish in this case is to regulate flows in

3

> streams whose flows were not historically regulated for the purpose of enhancing a population of fish that did not historically exist and whose continuing existence is not dependent on the repair, maintenance or operation of the dam structures.

California Trout characterizes the foregoing as de novo fact finding. The court disagrees. As pointed out by Plaintiff in its opposition to the motion for reconsideration, each of the facts asserted in the quoted portion of the June 8 Order is supported by uncontested facts found in the Administrative Record or ROD. While the court is bound to accept as true those facts set forth in the Administrative Record and the ROD, the court is aware of no authority that binds the court to view those facts in the same light as Forest Service or to place identical weight or importance on any given fact.

In the final analysis, the court used facts that were clearly and uncontroversially established by Forest Service to conclude that the repair, maintenance and operation of dams in the Emigrant Wilderness is not necessary for the administration of the area. That the court came to this conclusion in contradiction to Forest Service's conclusion does not constitute de novo fact finding; it constitutes formulation of a de novo legal conclusion.

**II. Necessity of Dams to Implement State Fisheries Management Objectives**

California Trout contends that a portion of the June 8 Order contradicts findings of fact contained in the ROD, which finds that the maintenance of the dams is necessary to implement state fisheries management objectives. The portion of the June 8 Order in question states:

> While fishing is an activity that is common among visitors to wilderness areas, neither fishing nor any other particular activity is endorsed by the Wilderness Act, nor is the enhancement of any particular recreational potential a necessary duty of wilderness area management. Rather, the Wilderness Act seeks to "secure for the American people of present and future generations the benefits of an enduring resource of wilderness." 23 U.S.C. § 1131(a). The wilderness that the Act seeks to preserve is not defined by reference to any particular recreational opportunity or potential utility, but rather by reference to the land's status or condition as being "Federal land retaining its primeval character and influence, without permanent improvements or human habitation [. . . .]" § 1131(c).

The foregoing quote is from a section of the June 8 Order that deals with whether the proposed agency action – the proposed repair, maintenance and operation of the dams – is necessary, as that term is defined by the Wilderness Act. As such, the quoted portion is simply this court's

interpretation of law, not a finding of fact or an application of fact to law. This portion of the June 8 Order discussed at some length the controlling nature of <u>Wilderness Society v. United States Fish & Wildlife Service</u>, 353 F.3d 1051 (2003). California Trout argues that <u>Wilderness Society</u> is not controlling on grounds that were thoroughly discussed by the court in its June 8 Order. California Trout presents no argument to persuade the court its reliance on <u>Wilderness Society</u> was in error.

California Trout's contentions with regard to the necessity to implement state fisheries management objectives is unclear, since fisheries objectives were not under discussion at that point in the June 8 Order. The question under consideration by the court at that point in the discussion is whether the Wilderness Act itself authorizes projects that enhance a particular recreational potential – in this case fishing. The court concluded it does not. California Trout offers no basis for this court to change that conclusion. The interplay between California fisheries management objectives and the Wilderness Act is a subject that the June 8 Order touched upon at a later point and that will be discussed *infra*.

**III. Arguments Concerning State Water Rights**

California Trout next challenges the portion of the June 8 Order that dealt with the Intervenors's argument that Plaintiffs' motion for summary judgment failed to adequately address California's legal interest in the repair, maintenance or operation of the dams. The argument before the court in the June 8 order was summarized by the court as follows:

> Next, Intervenors contend Plaintiff's arguments based on the Wilderness Act fail to take into account the exceptions contained in 16U.S.C. § 1133(d) that preserve existing state water rights and state rights to manage and regulate wildlife and fisheries. Section 1133(d) of Title 16 provides, in pertinent part:
>
> (6) Nothing in this chapter shall constitute and express or implied claim or denial on the part of the Federal Government as to exemption from State water laws.
>
> (7) Nothing in this chapter shall be construed as affecting the jurisdiction or responsibilities of the several States with respect to the wildlife and fish in the national forests.
>
> Intervenors contend that federal jurisdiction within the Emigrant Wilderness is "subordinate to the state's sovereign interest in the fish and waters

5

> affected by this case." Intervenors' opp. at 17:3-4. Intervenors further assert "California has a direct legal interest in the fish as well as in the navigable waters of the lakes impounded by the dams. The state may lawfully assert a right to sustain the fishery and to maintenance of the dams in issue that is unimpaired by the Wilderness Act." Intervenors' opp. at 6-9. Intervenors cite NRDC v. Houston, 146 F.3d 1118, 1131-1132 (9th Cir. 1998); NRDC v. Patterson, 333 F.Supp.2d 906, 917 (E.D. Cal. 2004); and California Trout v. State Water Resources Control Board, 207 Cal.App.3d 585 (1989), for the proposition that an owner of a dam is required, pursuant to California Fish & Game Code, section 5937, to release sufficient water from the dam to sustain downstream fish populations.

June 8 Order at 28.

The court noted Intervenors argument but rejected it noting:

> The court has examined the cited cases and finds their applicability in the present case is problematic because none of these cases deal with the intersection of the Wilderness Act with this particular portion of the California Fish & Game Code. It is not clear that section 5937 compels the continuing existence of a dam where the dam has no owner and no utility other than stream flow regulation. Nor is it clear that concerns of stream flow create an obligation to repair, maintain or operate a dam where there has been no operation of the dam for purposes of stream flow enhancement for a period of many years and there is no compelling evidence of "necessity." Finally, notwithstanding the applicability of the cited authority to the present case, the fact remains no party with standing to do so has chosen to assert state water rights. Intervenors appear to recognize this and have opted to not develop this argument any further; perhaps leaving it to the state to assert rights in the regulation of stream flows at some later time.

June 8 Order at 28-29.

California Trout first characterizes the court's observation reflected in the above-quoted paragraph that the dams in question have "no owner and no utility other than stream flow regulation" as "de facto fact-finding. The court has reviewed its June 8 Order and California Trout's objection and finds that the court's observations, although arguably inexact, are not materially erroneous. The Administrative record indicates clearly the dams have no *private* owner and that neither the State of California nor Forest Service asserted sovereignty over the dams in their briefing. Likewise, the utility of the dams primarily at issue in the ROD is repair and operation of the dams for purposes of regulation of stream flows for the purpose of enhancing fisheries. The court recognizes that the dams may raise the depth of existing lakes to some extent but that undisputed fact is not particularly central to Intervenors' contentions.

California Trout's main contention is that the court erroneously failed to address

6

intervenors' arguments going to the Wilderness Act's exception for established state water rights. Intervenors argued and California Trout reasserts the argument that the state of California may assert rights to maintain stream flows for purposes of furthering objectives of California Governmental agencies. The court did not reject Intervenors' contentions. Rather, the court noted that no party, including Intervenors, had made an actual argument asserting state water rights. The court further noted that the state, who is the entity recognized by Intervenors and by California Trout to have both authority and standing to advance an argument on the grounds of state water rights, did not make any argument in that regard.

California Trout argues in its motion for rehearing that Intervenors had standing to raise the issue of state water rights and did so. The court disagrees. Intervenors mentioned the possible existence of an issue but failed to raise it as a defense to Plaintiff's motion for summary judgment. Intervenors pointed out the *state could* raise the issue of state water rights, which the state never did, but Intervenors made no argument as to any particular water right or how such a right would be satisfied in the context of the proposed action. California Trout argues that Intervenors effectively raised the defense of state water rights when intervenor California Department of Fish and Game adopted Intervenors' arguments as set forth in Intervenors' amended memorandum of points and authorities. This argument is without merit for the reasons stated in the June 8 Order. In short, the court found that, while it might be true that the invocation of state water rights may be sufficient to prevent summary judgment, the defense was never actually asserted, particularly not by Intervenors' tangential reference to the topic. The court continues in this opinion.

California Trout's discussion concerning the navigable waters of California is an attempt to argue the merits of the state's water rights argument that was not put forward in either Defendants' or Intervenors' opposition briefs. The court sees no compelling reason to reconsider its prior order based on factual assertions and legal arguments that were not made in Defendants' or Intervenors' opposition to the motion for summary judgment. See Smith v. Airborne Freight Corp., 121 F.3d 717, 1997 WL 464622 at *2 (9 Cir. 1997) (court does not abuse its discretion in

denying motion for reconsideration where movant presents no new evidence or argument that could not have been presented previously). As in the June 8 Order, the court finds California Trout's argument is merely an argument that a party, presumably the State of California or one of its agencies, *could* advance an argument for an interest in the repair, reconstruction or operation of the dams based on existing California water rights and that the exercise of such water rights *could* compel denial of Plaintiffs' motion for summary judgment. The merits of Intervenors' argument for states' water rights was not advanced when the motion for summary judgment was before the court and may not and has not been advanced in this motion for reconsideration.

**IV. California Trout's Request for Hearing on State Water Rights**

In the instant motion for reconsideration, California Trout makes for the first time the argument that the waters impounded by the dams are navigable waters within the state of California and are therefore state property not subject to the terms of the Wilderness Act. California Trout contends Plaintiffs' action should therefore have been dismissed for lack of jurisdiction as to Plaintiff's claims for relief under the Wilderness Act. California Trout requests an evidentiary hearing on this issue, arguing that the issue is jurisdictional and may be raised at any time prior to judgment.

California Trout's argument conflates the argument that a federal statute may be inapplicable in a certain case with the court's jurisdiction over the parties or the subject matter. The issue California Trout raises is not jurisdictional in the sense of this court's jurisdiction over the case before it. The argument that the Wilderness Act is inapplicable on lands that underlie the navigable waters of California is a defense to Plaintiffs' contention that the repair, maintenance or operation of the dam structures violates the Wilderness Act. When the defense was not asserted in opposition to Plaintiffs' motion for summary judgment, it was waived.

In all, California Trout has raised two types of arguments; those arguments that the court has previously addressed and resolved and those arguments that are raised here for the first time. As to the first set of arguments, those alleging the court has engaged in impermissible fact finding or has misapplied the law or failed to grant due deference to Forest Service's findings of

fact, the court finds California Trout has merely repeated arguments previously rejected by the court and has not offered legal authority sufficient to cause the court to revisit its prior opinion. As to those arguments that are raised here for the first time, the court finds those arguments are not jurisdictional as to the matter currently before the court and that the arguments were waived.

The court notes that during the pendency of this motion for reconsideration, Defendants have filed an appeal before the Ninth Circuit Court of Appeal challenging the court's June 8 Order on grounds that largely duplicate grounds raised by California Trout. The court is of the opinion that California Trout's arguments belong before the court of appeal, not before this court.

**V. Cross-Motions to Strike**

California Trout asks the court to rule on cross-motions to strike certain documents and declarations. The court did not rely on arguments or facts submitted in declarations that were the subject of Intervenors' motion to strike. Intervenors' motion to strike is therefore DENIED as moot. Plaintiffs' motion to strike the attachment to Intervenors' opposition is DENIED.

THEREFORE, for the reasons set forth above, California Trout's motion for reconsideration is hereby DENIED.

IT IS SO ORDERED.

**Dated:   August 24, 2006**            /s/ Anthony W. Ishii
0m8i78                                   UNITED STATES DISTRICT JUDGE